The opinion of the Court was delivered by
Wardlaw, J.
Beyond the statements of the report, it appears to this Court that the meeting-house where the horse was hitched, was four or five miles west of the railroad: that the road which the horse followed was a public road: that there is on the railroad a deep cut at the crossing of the public road, and for a considerable distance above and below it, the crossing being made practicable by cutting down, at that point, the banks on either side: that the train of cars, which obstructed the crossing, was a freight train, that had early in the evening stopped for the night: and that the passenger train, which killed the horse, seemed, so far as could be judged from the foot-prints of the horse, to have passed the turn-out without slacking speed, and to have overtaken the horse running briskly.
The fence law, which has prevailed in this State, from a time soon after the distinction between forest and cultivated *231 lands was made by tbe settlements of Europeans, bas always required that cattle should be fenced out, and not fenced in. (See Acts, 1694, 2 Stat. 81; 1827, 6 Stat. 331.) It is not then unlawful for the owner of horses or cows to permit them to go at large, so as to roam upon all lands, of his own or of others, that are not guarded by a fence such as the law prescribes : and the entry of a horse or cow upon the unenclosed track of the railroad is no trespass. The owner of cattle, who permits them to roam, runs the risk of all damage which they may accidently receive, and so may sometimes be said to be negligent of his own interest: but he is not guilty of legal negligence such as embarrass his recovery from a person who, through negligence, hurts the cattle.
This Court perceives no negligence then on the part of the plaintiff, to be ascribed to the conduct of his bailee, who, after attempting in vain to catch the horse, that had been fastened in the ordinary way and had escaped, refrained from pursuing him four miles, and allowed him to go at large upon the public road that led to his stable.
The Court acquiesces too in the reference which the Eecorder made to Danner's case, for the presumption which arises from the killing of the horse by a train of cars, established and unexplained, and for the unfavorable inference raised by the absence of all the defendant’s agents who were at the killing. Negligence, rather than accident, is shown by proof of damage done by a train, when nothing more appears. The nature of the machinery used, and of the railway on which it is used, and the risk which from any obstruction encountered the engineer and all the lives and property under his care necessarily incur, are not of themselves sufficient to rebut the presumption of negligence; but these matters are worthy of much attention, and when strengthened by other sufficient circumstances would avail to rebut. Such other circumstances must usually come from the agents of the Eailroad Company, who alone are usually cognizant of them, and in the absence *232 of such agents cannot be established by conjecture. In this case, it appeared from the plaintiff’s testimony that the killing of tbe horse was done at night. That of itself is insufficient to show that the killing was accidental. If it had been proved that the night was foggy: that the train was in all respects properly equipped and managed: that the horse suddenly jumped upon the track, or stood still, or was hidden from view by a curve in the road: or in general, that from the time the horse could first have been seen, until he was killed, all proper means and appliances were used to avoid him, and used in vain, a case of accident would have been made out.
But beyond the ordinary presumption unrebut'ted, it appears in this case that the public road along which the horse attempted to cross the railroad, was obstructed by the company’s cars, and that the horse wandered up and down in the cut whose banks he could not climb. The obstruction of the public road was a wrong done by the company, which, under such circumstances would have justly entitled the plaintiff to recovery, even if the killing by the passenger train had been shown to be, so far as that train was concerned, wholly accidental and blameless. The thirty-third section of this Company’s charter (8 Stat. 415,) gives to the Company the right to run its track, along or across a public road, only on condition that the road shall not be thereby obstructed: therefore the banks of the cut were sloped at the crossing. The obstruction of the crossing was a nuisance: either the turn-out should have been large enough for the trains which stopped there, to have stood above or below the crossing, or else the cars of a train at rest should have been detached so as to give a free passage. This duty of leaving crossings unobstructed, which both common law and statute require, must be observed by the company, unless it is willing to take all consequences that may ensue from its violation. There is a further duty of slacking speed in passing a turn-out, and still a further one of giving sufficient warning,when a *233 crossing is approached, (both of which are recognised bj the custom of railroads, and we believe by the regulations of this company, and both of which are brought to mind in this case,) which must not appear to have been disregarded in any instance, where the company undertakes to show that all proper means were used to avoid damage complained of.
The motion is dismissed.
O’Neall, Withers and Whitner, JJ., concurred.
Motion dismissed.